Good morning, and may it please the Court. Douglas Yatter of Davis Polk & Wardwell, appearing as pro bono counsel for Petitioner Elena Munoz-Estrada. With the Court's permission, I would like to reserve two minutes for rebuttal. Your Honors will recall that Ms. Munoz-Estrada worked in the home of a former anti-narcotics official in Guatemala, that she witnessed the murder of her employer and two bystanders at the hands of a violent narcotics gang, and that several weeks later the gunman abducted her, brutally beat and raped her, and threatened her with death because she had witnessed their crime and because they believed she would cooperate with law enforcement against them. It is on this basis that she seeks asylum, withholding of removal, and relief under the Convention Against Torture. There is no dispute in this case that Ms. Munoz-Estrada suffered harm rising to the level of persecution. The I.J. made this finding after reviewing all the evidence and concluding that Ms. Munoz-Estrada was credible, direct, sincere, and consistent. The I.J.'s denial of relief, however, and the BIA's affirmance of that denial, presents two primary issues for this Court's review. First, the I.J. ignored compelling evidence in finding that the government of Guatemala could protect Ms. Munoz-Estrada. And second, the I.J. erred in holding that Ms. Munoz-Estrada had not established a nexus to wander both of the protected grounds that she asserts, namely imputed political opinion and social group. Turning first to the government's inability to protect Ms. Munoz-Estrada. Sotomayor, why isn't this just a personal vendetta or retribution that would not be connected to a political ground? That's my — just speaking for myself, that's my biggest concern with your position. Your Honor, it's established in the record that Ms. Munoz-Estrada worked for this former anti-narcotics official and that he was known as such in the community. It's also established that the gunman, that this was a narcotics gang that had committed the crime. When they abducted her and committed the brutalization on her specifically, they told her, they threatened her that no one should cooperate, that she shouldn't cooperate, and if they saw her again, they would kill her. So in that situation, there was no personal vendetta against Ms. Munoz-Estrada based on her affiliation to Marco Venezio, the former narcotics officer. They presumed that she was someone who would and could cooperate with law enforcement against them, and they had a vested interest in suppressing her from doing so. But, counsel, aren't you suggesting really that she's seeking asylum from the narcotics gangs and not from the government? Well, Your Honor, the narcotics gang is an entity that the government of Guatemala is unable and unwilling to control, which is a core piece of this claim here. The country conditions establish that the narcotics gangs run rampant and corruption is deeply seeded, that law enforcement is underfunded and incapable of suppressing most of their activities. In this case specifically, we see that they were able to assassinate a former anti-narcotics official, and that they could visit this harm upon the Petitioner herself, even the government. Did she report the crime and give the government an opportunity to assist her? She did not report the crime, Your Honor. After witnessing the murder, she was rightfully terrified about what had happened, that this, you know, important man, this former narcotics official, could be killed in front of his home like that. She retreated to her own home for over a month, and no one came to question her, even though she was known to work for the family and known to have been on the scene. So it was reasonable to assume that there was no thorough investigation going on. And as soon as she emerged from her house to go back to work for a day to make some money to support her daughter, that's when she was abducted, and the threats that had previously been made to the widow of Marco Vinicio were made good upon. Help me out. Is it enough that there is a criminal element out of control to qualify for persecution on a – that the government can't control for persecution on account of belonging to a Well, Your Honor, in the context of Guatemala, where, you know, the reports are that it's becoming another Colombia and that the narcotics gangs are running rampant and that they have every interest in preventing the legitimate government and legitimate law enforcement from doing their jobs, it's actually quite analogous to a guerrilla group that is attempting to gain control of parts of the country or cities and towns so that they can conduct their own activities for their own benefit. Have we held that in a case? Not specifically, Your Honor. But certainly there are, you know, it's supported that entities that the government is unable or unwilling to control that are in opposition to, you know, political entities can be the basis for it. Well, that's true, for example, with an entity like the IRA or a religious sect that is persecuting. But I just have not seen it with respect to a criminal. Why isn't it reasonable for the BIA to have concluded that whatever happened, happened on account of her being a witness to a crime rather than on account of an imputed political opinion? I mean, getting rid of a witness to a crime or terrorizing them is horrible, but it's not one of the listed grounds in the statute. Specifically, it's not in the statute, Your Honor. But in this context where you have this tension between a narcotics gang and an anti-narcotics officer, it's a very public, very political dispute between them about how the country is going to operate. But why does the record compel a finding that this group thought that she had that opinion as distinct from thinking that she might cause them trouble as a witness to their crimes? Well, Your Honor, there were other witnesses to this crime. Two of them were killed on the scene. That strengthens my point, doesn't it? What I'm getting to, though, Your Honor, is that when they specifically abducted her, walking home from Marco Venezio's house from the scene of the crime several weeks later, and told her that the family shouldn't cooperate and she shouldn't cooperate, so they were linking her to this family, to Marco Venezio's family, which is their opposition. It is the anti-narcotics authorities. So anybody who's linked with the, in some way, with a government official in Guatemala, why would it compel the BIA to permit them to get asylum here? Well, Your Honor, only if they can show that they either held a political opinion or had one imputed to them based on that connection and that they suffered persecution on account of it. And clearly, Ms. Munoz-Estrada suffered extreme persecution. I'm sorry. Her imputed political opinion is what?  to commit such crimes with impunity, which clearly would be their view is that they should be able to. Returning for a moment to the government's inability to protect Ms. Munoz-Estrada, I'd like to call the Court's attention to several specifically erroneous findings that the IJ made. First, the IJ found that there was — well, Your Honor, maybe I should save this for rebuttal. I see that I have just two minutes left. You may. Thank you. Good morning, Your Honors. My name is Shahira Tadros. I may please the Court. I'm here on behalf of the United States of America. This petition for review should be denied, Your Honors, because the record evidence does not compel reversal of the agency's determination that Petitioner failed to show persecution by a group the government was unwilling or unable to control. And further, Petitioner — the record does not compel reversal because Petitioner has failed to show that she was persecuted on a counterprotected ground. Counsel, I'm — I'm more concerned with the Catt claim from — in terms of your position, I'm more concerned with the Catt claim than the asylum claim. Yes, Your Honor. Why — why isn't the evidence in this record evidence that demonstrates that the government is — is likely to allow this person to be tortured upon her return to Guatemala? Your Honor, Petitioner in this case never went forward to the government, either before or after. The government had no idea that she witnessed this crime. They had no idea that she was brutally raped afterward. She's never — there's no acquiescence by the government. In fact, in this case, the government went — I guess I don't understand the position that the government here is unable or unwilling to protect Petitioner or others when the government not only investigated this crime — I mean, in a very short time, within 40 days of the murders, the government had everyone involved with the murders in custody. And I think the record also shows Ms. Munoz-Estrada said herself that by the time — either by the time she got here or shortly after her arrival, there were convictions in place, and these people are now serving time. So for a Catt claim, you have to show that the government has somehow acquiesced in — in the torture, that you did suffer or you may suffer. And on this record, there's no such evidence at all, let alone compelling evidence. Does that answer your question, Your Honor? Yes. Yes, I understand your position. Thank you. Okay. Going back for a second, with regard to — since we've already addressed unable or unwilling to control, I'll just move on to the on-account-of finding by the immigration judge and the board. Petitioner claims that she was persecuted for two grounds, past persecution based on an imputed political opinion and a future persecution based on her membership in a group. As far as her imputed political opinion, when she was abducted and brutalized, her abductors never once attributed any political opinion to her whatsoever. There's no evidence in the record that they attributed an opinion to her that Guatemalan because she witnessed a prior crime. That's the only evidence in the record. And that, Your Honors, is not a protected ground. It is not a protected ground under the Immigration and Nationality Act. The other — the other thing that she failed to show is that no one else in the group, no one else that witnessed the crimes — and those people must have participated in the investigation on some level. They must have participated in the prosecution of these individuals on some level. No one else was harmed. She may have been a scapegoat. They set — they wanted to send a message to the family not to cooperate, but all of that has to do with criminal activity. It doesn't have to do with her political opinion or even if she held such an opinion. There's no evidence that her attackers knew. And with regard to the point that counsel is making with regard to her employer being a narcotics officer, he was a retired narcotics officer. There's no evidence in the record that says she worked for him during the time while he was a narcotics officer. Further, she evidently knew the person behind the murder because — because the — her employer and the person who evidently set up the murders were friends. So there's no — the record doesn't even contain objective evidence that this was related to drugs at all. No one — there's no objective evidence. The articles put in the record by Petitioner make no mention of this — of the fact that drugs were related, and the — you know, they put forth this idea that he was a very well-known former narcotics officer. It seems to me that in these objective news articles, there would be some mention of that fact, and there is no mention of that fact at all. With regard to her membership in a group, Petitioner has also failed to show that a nexus exists between the harm she suffered and membership in a group. And, Your Honors, I'll say now that to show a particular social group, an analysis has to be done in terms of the legality of a social group existing and the factual basis for a social group existing. And on this record, the board and the immigration judge did not do a legal analysis under Acosta. They only did a factual analysis. And under that factual analysis, the immigration judge found that because no members of the group were harmed, counsel has said that two people were also murdered at the same time that her employer was murdered. However, that — there's no evidence that they were murdered because they were witnesses. Objectively, they were probably hit in the line of fire. There's no evidence that it was to silence them. They were standing closest to him. That's what the record shows. No other witnesses were harmed. Petitioner claims that the employer's wife was threatened later on, but they were only threats. In the time between the actual — her abduction and the time she left to come to the United States, there was about a six- or seven-month intervening time period. Petitioner has put forth no evidence that during that time period anyone, including herself, was harmed or threatened. We've already addressed Cat. Are there any other questions, Your Honors? I don't appear to be in. Based on the foregoing, the government rests on its brief. Thank you for your time. Your Honor, a few quick points in response. First, the government stated with regard to Judge Graber's question about the Cat claim that everyone involved was in custody within 40 days. That's simply not correct based on this record. Ms. Munoz-Estrada credibly testified that the two gunmen, the specific men who killed Marco Vinicio, were the two men who abducted, brutalized, and raped her, and that that happened after the arrest about which the government spoke just now. Second, again, the government stated that no one else was harmed, but referenced specifically the fact that two bystanders were killed at the scene. There is evidence in the record that they were killed as witnesses to the crime. The specific account of Ms. Munoz-Estrada was that the gunmen in the taxi went back and forth waiting for Marco Vinicio specifically to come out of the house. Everyone else was on the lawn before him. It was when he came out that they emerged. They shot him. Then they shot into the crowd and killed those other two people. Also with regard to whether there's objective evidence in the record, the articles, which were pretty close to the time of the events in question, don't reference narcotics. But that's understandable. The reason this was in the news was not because it was a narcotics crime. That's commonplace. It's because two rock musicians were killed at the scene. That's why it made this a notorious and newsworthy crime in Guatemala. And then to return to a point that was addressed earlier, Ms. Munoz-Estrada's relationship to Marco Vinicio is similar to what this Court held in Navas can be the kind of relationship that gives rise to an imputed political opinion. There, the Court stated that an employment relationship to a government official, whether or not the employment itself is politically structured, can be the basis for a political opinion. And in Corte Angostura, the Petitioner's presumed affiliation to the Guatemalan government as a literacy teacher was a similar such relationship. Thank you. Thank you, Your Honor. The case just argued is submitted for decision. We'll hear the next case, Faulkner v. Arizona. Thank you.
judges: Schroeder, Graber, Duffy